533 A.2d 1325

**Dorothy GRAY et al.**

v.

**ANNE ARUNDEL COUNTY, Maryland et al.**

**No. 366, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

Dec. 4, 1987.

302

Leonard Z. Bulman, Annapolis, for appellants.

Darrell L. Henry, Joyce Causey (Stephen R. Beard, County Sol., David A. Plymyer, Deputy County Sol., Eileen E. Powers and Miller, Brassel & Baldwin, P.A., on the brief), Annapolis, for appellees.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal from the judgment of the Circuit Court for Anne Arundel County, affirming a decision of the Anne Arundel County Board of Appeals to uphold the issuance of a building permit to Eugene and Joyce Causey,[1] two of the appellees herein,[2] authorizing the relocation of two mooring pilings in Bear Neck Creek. Appellants, Dorothy Gray and Alice Peters, the owners of the waterfront property adjoining that owned by the Causeys, present four questions for our resolution:

1. Did the Circuit Court of [sic] Anne Arundel County in affirming the County Board of Appeals properly consider the arbitrary, capricious, unreasonable, and illegal acts of the County Board of Appeals?

2. Did the County Board of Appeals of Anne Arundel County make findings of fact upon which the circuit court could affirm its opinion and order?

3. Did the circuit court, and the County Board of Appeals of Anne Arundel County err in not finding that the Anne Arundel Code, Section 10–111(B) requires the Office of Planning and Zoning to designate the location of the pilings and in selecting the sideline location Planning and Zoning must choose the option which will cause the least interference to neighboring uses, as specifically stated in said section of the Code?

4. Did the court err in not finding that the County Board of Appeals erred in determining that it and the Office of Planning and Zoning may not consider existing admitted violations of the setback requirement in the use of the pilings and the boat slip created thereby or their authority to place conditions on the use of the pilings and boat slip?

---

1. Eugene Causey died after this appeal was noted.

2. Anne Arundel County, Maryland is the other appellee, having been granted leave to intervene, as a party appellee before the Circuit Court by order dated October 21, 1986.

We discern no error; therefore, we affirm. In explaining our decision, we will address the issues in an order somewhat different than that proposed by appellants.

The events giving rise to this appeal began on July 2, 1980, when the Causeys installed two mooring pilings in the water adjoining their waterfront property. Installation was made without benefit of a building permit and their subsequent application to the County for the issuance of a permit was denied. Despite the denial of the application, the pilings were not removed. The Causeys' efforts to maintain the pilings by obtaining a variance or otherwise acquiring official sanction for their continued installation, and appellants' opposition to such actions, resulted in several years of litigation,[3] which culminated when the Circuit Court for Anne Arundel County passed a judgment finding that the pilings were located too close to the center of Bear Creek in violation of § 13–300.16(a)(1) of the Anne Arundel County Code (1967).[4]

Having been unsuccessful in their efforts to maintain the pilings as installed, the Causeys filed an application, which included a permit drawing, for a building permit to relocate the pilings consistent with the circuit court's decision. The Office of Planning and Zoning, having computed the center

---

**3.** The Causeys' efforts to maintain the two pilings included filing an application for a variance and reapplying for a building permit. The application for variance was eventually denied by the Board of Appeals following appellants' appeal to the circuit court, which resulted in the case being remanded to the Board. Appellees' second application for a building permit also was eventually denied by the Board and affirmed by the circuit court. These proceedings took some five years.

**4.** Section 13–300.16(a)(1), "Piers", provided:
(a) Private piers, wharves, mooring pilings, and buoy installations shall be limited to the lesser of: (1) one-half (½) the distance from mean high water line to the centerline of the body of water upon which it is situated....
Upon the recodification of the Anne Arundel County Code in 1985, this section became Art. 28, § 10–111(a)(1). Unless otherwise stated, all future references to the Anne Arundel County Code are to Article 28.

line and side property line setback requirements in accordance with Art. 28 § 10–111 of the Anne Arundel County Code (1985) and concluded that those requirements were met,[5] granted the application and issued the requested permit. Appellants appealed the issuance of the building permit to the County Board of Appeals. While that appeal was pending, appellees removed the pilings and relocated them pursuant to the building permit.

The County Board of Appeals took testimony and heard argument on appellants' appeal and issued an Opinion and Order upholding the issuance of the permit. The Board rejected appellants' interpretation of § 10–111(b)[6] as requiring the Office of Planning and Zoning to refuse to issue a building permit for the installation of pilings if any of the options in § 10–111(c) would cause interference to neighboring uses. Instead, the Board interpreted that section to "[require] that an option be chosen, and that the option chosen be the one which causes the least interference to neighboring uses." It then found that the option that would cause the least interference to neighboring uses was option 3, the "center of the cove" option. Having found that the location of the pilings as proposed by appellees was in compliance with the side property line setback requirement contained in subsection (c)(3), as well as the center line

---

**5.** Article 28 § 10–111(c) provides:
(c) A pier, piling, or buoy installation shall be located at least 15 feet from a line extended:
(1) from the side property line at a 90 degree angle to the main course of the body of water;
(2) from the extension of the last course of the property line into the water;
(3) from the side property lines to the center of cove; or
(4) from the side property lines generally parallel with existing piers located on adjacent properties.

**6.** That section provides:
(b) The location of a pier, piling or buoy installation shall be designated by the Office of Planning and Zoning provided that the choice of location is limited only to the option specified in subsection (c) of this section that will cause the least interference to neighboring uses.

setback requirements of subsection (a)(1), the Board concluded that the building permit was properly issued. Finally, the Board rejected appellants' argument that it should consider and regulate the placement of boats in slips created by mooring pilings, opining:

> Section 10–111 ... does not address the issue of "slips" (as defined in § 1–101 of the Code), nor does it allow for consideration of the location of vessels. The matter before the Board involves the placement of pilings in the water; it is that matter only which is the subject of this appeal.

Appellants fared no better on its appeal of the Board's decision to the circuit court. That court, having received memoranda from the parties and heard oral arguments, affirmed the decision of the County Board of Appeals, specifically adopting its interpretation of § 10–111(b) and categorically determining that the Board was correct in finding that the County Code did not authorize the regulation of boats in slips.

### *Interpretation and application of § 10–111(b)*

The primary argument advanced by appellants is that the interpretation placed upon § 10–111 by the Board of Appeals and the circuit court is erroneous. They also contend, on a related issue, that "the Board did not consider the 'interference' matter and the appellees and the County presented no evidence on the 'interference' factors", rendering the Board's decision arbitrary, capricious, and invalid as a matter of law. We perceive these complaints to relate to the propriety of the Board's, and the court's, interpretation of § 10–111 as well as to the Board's application of the law to the facts it found. We will address each contention in turn.

The thrust of appellants' argument is that, pursuant to subsection (b), a piling must be located by the Office of Planning and Zoning so as to cause the least interference with neighboring uses. To reach this result, appellants focus primarily upon the first clause of the subsection—

"the location of a ... piling ... shall be designated by the Office of Planning and Zoning ..."—and the Webster's Dictionary definition of "designate"—"to point out the location of ...: specify". From this they reason "that Planning and Zoning need not accept, as has occurred here, the pilings' location designated by appellees, to wit, in the area adjoining the appellants' waterfront." They construe the proviso, "provided that the choice of location is limited to the option specified in subsection (c) of this section that will cause the least interference to neighboring uses", to mean that "Planning and Zoning must locate the pilings in applying the option chosen (center of cove) where they will cause the least interference to neighboring uses." In short, appellants' interpretation of subsection (b) emphasizes the location of the pilings as the critical issue in defining the nature and extent of interference to neighboring uses.

Appellees take a different view. They assert, consistent with the interpretation of the Board and the circuit court, that *"[i]t is the option* selected from section (c) which must cause the least interference, *not the precise location* of each piling." (emphasis in original) In their view, to interpret the subsection as appellants do requires that a portion of the proviso, namely, "provided that the location is limited only to the option specified in subsection (c) of this section", be deleted from consideration, thus violating a cardinal principle of statutory construction.

In order to resolve this issue, it is of course necessary that we review and apply the appropriate rules of statutory construction. Before doing so, however, we must address a threshold issue: What is the appropriate standard of judicial review of this matter?

"... [T]he order of an administrative agency, such as a county zoning Board, must be upheld on review if it is not premised upon an error of law and if the agency's conclusions 'reasonably may be based upon the facts proven.'" *A.D. + Soil, Inc. v. County Commissioners,* 307 Md. 307, 338, 513 A.2d 893 (1986), quoting *Annapolis v.*

*Annap. Waterfront Co.*, 284 Md. 383, 399, 396 A.2d 1080 (1979). This is the same rule that has been enunciated and applied in connection with the decisions of the Maryland Tax Court. *See Ramsay, Scarlett and Company, Inc. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296 (1985); *Thames Point Associates v. Supervisor*, 68 Md.App. 1, 9, 509 A.2d 1207 (1986); *Comptroller v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 438–39, 508 A.2d 148, *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986); *Matthew Bender & Company, Inc. v. Comptroller*, 67 Md.App. 693, 705–06, 509 A.2d 702 (1986). The statement of the rule makes clear that the standard of review to be applied depends upon the nature of the agency finding being reviewed. *Thames Point Associates*, 68 Md.App. at 9, 509 A.2d 1207. It has been interpreted to require a three-step analysis, as follows:

1. First, the reviewing court must determine whether the agency recognized and applied the correct principles of law governing the case. The reviewing court is not constrained to affirm the agency where its order "is premised solely upon an erroneous conclusion of law." [*Ramsay, Scarlett*] [302 Md. at] 834, 490 A.2d 1296.

2. Once it is determined that the agency did not err in its determination or interpretation of the applicable law, the reviewing court next examines the agency's factual findings to determine if they are supported by substantial evidence, *i.e.*, by such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* At this juncture, the *Ramsay, Scarlett* court reminds us that "[I]t is the agency's province to resolve conflicting evidence, and, where inconsistent inferences can be drawn from the same evidence, it is for the agency to draw the inferences." *Id.* at 835, 490 A.2d 1296.

3. Finally the reviewing Court must examine how the agency applied the law to the facts. This of course is a judgmental process involving a mixed question of law and fact, and great deference must be accorded to the agency. The test of appellate review of this function is "Whether,

... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." *Id.* at 838, 490 A. 1296.

*Id.* Thus, where the issue before the appellate court is one of law, the Court's review "is expansive, that is, the appellate court may substitute its judgment for that of the [administrative agency]." *Thames Point Associates,* 68 Md.App. at 10, 509 A.2d 1207. Where, however, the issue involves review of the agency's factual determinations or a mixed question of law and fact, a more restricted standard of review—determining whether there is substantial evidence in the record to support the factual findings or determining whether, applying the appropriate legal principle, a reasoning mind could have reached the conclusion reached by the agency—applies. *Id.*

At the heart of the controversy *sub judice* is the meaning of subsection (b) of § 10–111. This is an issue of statutory construction. Such an issue involves a question of law, *Comptroller v. Mandel Re-election Com.,* 280 Md. 575, 578, 374 A.2d 1130 (1977). *See Montgomery County v. Fulks,* 65 Md.App. 227, 232–36, 500 A.2d 302 (1985); therefore, our review of the interpretation of that subsection by the Board of Appeals and the circuit court is expansive.

Approaching the construction of subsection (b), it is necessary to review the cardinal principles of statutory construction. "To ascertain and effectuate the actual legislative intention in enacting any statute is, of course, the cardinal rule of statutory interpretation," *State v. Intercontinental, Ltd.,* 302 Md. 132, 137, 486 A.2d 174 (1985); *In Re Criminal Investigation No. 1–162,* 307 Md. 674, 685, 516 A.2d 976 (1986); *Sites v. State,* 300 Md. 702, 710, 481 A.2d 192 (1984), the primary source of which is the language of the statute itself. *Blum v. Blum,* 295 Md. 135, 140, 453 A.2d 824 (1983). We said in *Ford Motor Land Development v. Comptroller,* 68 Md.App. 342, 346–47, 511 A.2d 578, *cert. denied, Comptroller v. Ford Motor Land Dev.,* 307 Md. 596, 516 A.2d 567 (1986):

"Where the language [of the statute] is clear and free from doubt the court has no power to evade it by forced and unreasonable construction", *State Tax Commission v. C & P Telephone Company*, 193 Md. 222, 231, 66 A.2d 477 (1949). Thus, where "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly". *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). Furthermore, the statute must be construed considering the context in which the words are used and viewing all pertinent parts, provisions, and sections so as assure a construction consistent with the entire statute. *Comptroller v. Mandel Re-election Comm.*, 280 Md. 575, 579, 374 A.2d 1130 (1977). And, if there is no clear indication to the contrary, a statute must be read so that no part of it is "rendered surplusage, superfluous, meaningless, or nugatory." *Board of Education, Garrett County v. Lendo*, 295 Md. 55, 63, 453 A.2d 1185 (1982); *Baltimore Building and Construction Trades Council v. Barnes*, 290 Md. 9, 15, 427 A.2d 979 (1981). On the other hand, we "shun a construction of the statute which will lead to absurd consequences". *Erwin & Shafer, Inc. v. Pabst Brewing Company*, 304 Md. 302, 311, 498 A.2d 1188 (1985), or "a proposed statutory interpretation if its consequences are inconsistent with common sense." *Blandon v. State*, 304 Md. 316, 319, 498 A.2d 1195 (1985).

Moreover, we "may not insert or omit words to make a statute express an intention not evidenced in its original form." *Hackley*, 300 Md. at 283, 477 A.2d 1174 (1984). In other words, courts should "avoid creating [an] ambiguity where none exists ... [and] be wary of inserting words with a view toward making the statute express an intention which is different from its plain meaning...." *Fulks*, 65 Md.App. at 233, 500 A.2d 302. (citations omitted)

 Applying these principles to subsection (b) produces a clear result. Although the subsection could have been more artfully drafted, application of the rules of statutory

construction makes plain that the Office of Planning and Zoning's designation of the location of a piling "is limited only to the option specified in subsection (c)" and, further, that it is the selection of that option which must cause the least interference to neighboring uses. As appellees point out, interpreting that subsection as appellants would have us do would require that we not consider the phrase, "provided that the location is limited only to the option specified in subsection (c) of this section", at all. As we have seen, this we cannot do. We conclude that appellees are correct; it is the option selected, not the location of a piling, which is the appropriate object in reference to which the determination of whether neighboring uses are subjected to the least interference possible must be made. The object of the phrase "that will cause the least interference to neighboring uses", is clearly the phrase "option specified in subsection (c) of this section" and not the term "the location". Thus, neither the Board of Appeals nor the circuit court premised its decision solely upon an erroneous conclusion of law.

Appellants' argument that "the Board did not consider the 'interference' matter" is directly related to its interpretation, not only of the ordinance, but of the nature of the interference at which the ordinance is directed. Were appellants correct, that the ordinance requires the Office of Planning and Zoning, in designating the location of the pilings, to select that location which causes the least interference to neighboring uses, it would naturally follow that, in order to discharge its responsibilities, the Office of Planning and Zoning would have to consider the neighboring property owners' "actual" use of their piers and the effect that the installation of pilings at any given location would have on those "uses". If, on the other hand, appellees' interpretation of the ordinance is correct, there is no need to consider the "actual" neighboring uses. We have rejected the premise on which appellants base their argument and we also reject the conclusion which flows from it. But we

think appellants' argument is untenable for another reason as well.

Implicit in the Board's interpretation of subsection (b) is the determination that the interference at which the statute is directed is "spatial", rather than "actual". Determining the degree of interference with neighboring uses by reference to an option for the placement of pilings on the usable water area adjacent to a permit holder's property necessarily and, in this case, certainly, involves restricting the amount of usable water space available to a permit holder for location of pilings and, concomitantly, expanding, to the extent of the restriction, the usable water space available to the adjacent property owners for their use. Reference to the ordinance demonstrates that this is so. The ordinance, by providing four options for the determination of side property line setbacks and by requiring that pilings be located in accordance with that one of the four that causes the least interference to neighboring uses, contemplates both a restriction of the permit holder's ability to locate pilings and an expansion of neighboring property owners' ability to use the water adjacent to and surrounding their property. This is accomplished because each of the four options will ordinarily produce differing areas of usable water space, depending upon the configuration of the subject property. The option which most limits the permit holder's choice of location, thus leaving the greatest usable water area for neighboring uses is deemed, under the ordinance, to be the one that causes the least interference to neighboring uses. Under this approach, it is unnecessary for the reviewing authority to determine, or even to consider, what the actual neighboring uses are. Nor is it necessary that it be determined to what extent such uses are affected by the location of the pilings. What is at issue is which of the four options provided is most restrictive of the permit holder's use of the water abutting his property and, in turn, most expansive of the adjoining property owner's use.

The critical element of this phase of the inquiry is the determination of the option which is least restrictive to neighboring uses. That determination, involving the application of the law to the facts, is a mixed question of law and fact. As we have seen, the standard of appellate review of such a question is "whether, ... a reasoning mind could reasonably have reached the conclusion reached by the [agency], consistent with a proper application of the [controlling legal principles]." We hold that a reasoning mind could reasonably have reached the conclusion that the Board reached.[7] Consequently, we also hold that the circuit court did not err in affirming the Board's conclusion on this point.

### Inadequate findings of fact

■ Appellants assert that the Board failed to make adequate findings of fact as required by the Board of Appeals Rule 18.[8] They acknowledge that the Board referred to each of the factors required to be considered before granting a permit for the installation of pilings; however they argue that the Board utterly failed to make a finding regarding each factor. We do not agree.

Unlike the situation in *Ocean Hideaway Condo. v. Boardwalk Plaza*, 68 Md.App. 650, 515 A.2d 485 (1986), the

---

7. In this case, the parties agreed that appellees' suggested location for the pilings complied with each of the four options. In this case, given the configuration of the Causey's property, the center of the cove option is clearly the most restrictive of the four. Under that option, extending the Causey's property lines to the center of the cove to each of the property lines, forms a triangle in which the side closest to appellants' property slants away from appellant's property; thus the usable water space, available for placement of pilings, is less than that available by the application of other options.

8. Rule 18. Findings and conclusions.
 (a) Within (30) thirty days after the termination of the proceedings, the County Board of Appeals shall prepare and file in the proceedings and, where appropriate, in the land records of the county, a written succinct memorandum of their findings and conclusion; ... the County Board of Appeals' findings of fact shall rest entirely upon the pleadings and evidence presented at the hearings.

Board's Opinion and Order, consisting of ten pages, made adequate findings of fact. Not only did the Board summarize the testimony of the various witnesses that appeared before it, but it discussed the relevant ordinance, and made findings and drew conclusions, albeit some of the findings were made by reference back to the summarized testimony, and applied the law. Although the findings are not set out in the form that appellants would prefer, reviewing the Opinion and Order in context, and in its entirety, we are convinced that the decision in this case does not suffer from the deficiencies noted in the cases relied upon by appellants.[9] Accordingly, we discern no error.

### Power to regulate use of pilings

Appellants finally contend that, even if appellees' pilings are "technically within proper setbacks", the Board erred in refusing to consider and regulate the use of the pilings and boat slip. Specifically, appellants argue that the Board was under a duty to impose conditions as to the use of slips created by the installation of pilings. This argument is premised upon the provision in § 13–300 of the Anne Arundel County Code (1967) which prohibits the "use" of a structure permitted by the Code used in a manner contrary to the general welfare and upon the definition of "use" to mean "a purpose for which a site is employed, taking the form of a structure or activity." § 1–120, Anne Arundel County Code (1985). Because the Code provides for the creation of a "slip", "a water area that is used for the wet

---

**9.** There is not even a colorable similarity between the Opinion and Order in this case and that in *Ocean Highway, supra, See* 66 Md.App. at 653–54, 515 A.2d 485. Nor may the Opinion and Order be rationally equated to the agency decisions at issue in *Turner v. Hammond,* 270 Md. 41, 310 A.2d 543 (1973); *Pistoria v. Zoning Board,* 268 Md. 558, 302 A.2d 614 (1973); *Baker v. Board of Trustees,* 269 Md. 740, 309 A.2d 768 (1973); *Montgomery v. Board of County Commissioners,* 256 Md. 597, 261 A.2d 447 (1970); *Bluebird Cab Company v. Department of Employment Security,* 251 Md. 458, 248 A.2d 331 (1968). In none of these cases did the administrative agency go to the lengths that the Board did in this case in reviewing the evidence, finding facts, stating its conclusions from the evidence, and applying the law to the facts.

storage or temporary docking of a watercraft in conjunction with a pier, piling, buoy, or other similar facility", § 1-100(62)(i), appellants contend that Planning and Zoning could, and should, have imposed conditions as to the use of such a slip so as to cause the least interference to neighboring uses. Their failure to consider even the existence of the "slip" and their refusal to impose conditions, were, in appellants' view error.

We agree with the Board, that the only issue before it was the appropriate placement of the pilings in the water, not the placement of boats in the slip created by the pilings. The Board did not err and, consequently, neither did the circuit court in affirming its ruling.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANTS.