539 A.2d 688

**ROBERTS OXYGEN COMPANY, INC.**

v.

**COMPTROLLER OF THE TREASURY.**

**No. 991, Sept. Term 1987.**

Court of Special Appeals of Maryland.

April 7, 1988.

Janet M. Meiburger (Lawrence A. Katz and Zuckerman, Spaeder, Goldstein, Taylor & Kolker, on the brief), Washington, D.C., for appellant.

Ralph Tyler, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Linda Koerber Boyd and Gaylin Soponis, Asst. Attys. Gen., on the brief), Baltimore, for appellee.

Argued before WILNER, BISHOP and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

This is an appeal by Roberts Oxygen Co., Inc., appellant, from the judgment of the Circuit Court for Montgomery County reversing an order of the Maryland Tax Court. The only issue presented for resolution is the propriety of that ruling.[1] Because we will hold that the court erred, we will reverse.

---

1. This is made clear by the three questions posed by appellant:

Appellant is a wholesale distributor of compressed gases, compressed gas cylinders, welding supplies and equipment. The gases when sold are contained in cylinders, which may be owned by appellant or by the customer. The price of the gas sold does not depend upon the ownership of the cylinder; rather, the price of the gas is the same whether the cylinder is owned by appellant or the customer. The customer is billed for the gas when the customer receives a full cylinder. The customer is not charged for the use of the cylinder, either as a separate charge or in the price of the gas.

The customers using their own cylinders receive but one invoice, an invoice for the price of the gas. When the gas is sold in cylinders owned by appellant, however, the transaction is somewhat different. In those cases, the customer receives two invoices, one for the price of the gas and, at the end of each calendar month in which the customer has had a cylinder, a "demurrage invoice". If at the end of the month covered by the demurrage invoice, appellant's cylinders have been returned, no demurrage fee is paid and the invoice can be disregarded. On the other hand, if the customer retains possession of appellant's cylinders at the end of the month covered by the demurrage invoice, a demurrage fee of $27.50 per cylinder per month is payable.[2] Thus, transactions involving the use of appellant's cylinders have two aspects: (1) the sale of the gas and (2) transfer of possession of the cylinders in what appellant characterizes

---

1. Is the Tax Court's decision, that Roberts acquired the cylinders for resale, correct as a matter of law and supported by substantial evidence in the record?
2. Does the standard of review compel an affirmance of the Tax Court's decision?
3. As a policy matter, should Roberts Oxygen and Baltimore Oxygen be treated alike?

**2.** Whether customers using appellant's cylinders must pay a demurrage fee is not dependent upon when, during the month, the customer obtained possession of appellant's cylinders. The customer purchasing gas contained in appellant's cylinder on the last day of the month is billed for demurrage in the same manner as is the customer whose purchase is made at the beginning, or in the middle, of the month.

as a "demurrage transaction". In demurrage transactions, only possession of the cylinders is transferred to the customer; appellant retains title to the cylinders, which are capitalized and depreciated on appellant's books.

Appellant's demurrage transactions result in a demurrage charge being payable by its customers approximately 99 percent of the time. These fees account for approximately 18.2 percent of appellant's gross sales income and 66.65 percent of its total operating profit. Appellant treats the demurrage revenue as sales income and the cost of owning the cylinders it provides to customers as a cost of goods sold. This treatment is consistent with the practice in the industry.

Appellant purchases the cylinders it uses in demurrage transactions. Some of the cylinders are purchased without valves, in which case appellant also purchases valves for installation on those cylinders. The valves are then attached to the cylinders and the cylinder and valve are used as one unit in the demurrage transactions. All cylinders are interchangeable and none of the cylinders are used by appellant for the storage of the gases, which are stored in large bulk storage tanks on appellant's premises.

Appellant neither collected sales tax on its demurrage transactions in Maryland nor paid an excise tax on its use, storage, or consumption of cylinders. Likewise, appellant did not pay use taxes on cylinder valves that it purchased for incorporation into the cylinders, purchased without valves, it used for demurrage transactions.

On January 27, 1984, the State of Maryland Retail Sales Tax Division, Comptroller of the Treasury (Comptroller), appellee, levied an assessment against appellant for past due sales and use taxes, including interest and penalty, he alleged were due on appellant's cylinder and valve purchases. Following a formal hearing, held to consider appellant's request that the assessment be revised, the Comptroller affirmed the assessment, although he waived the penalty charges. Appellant appealed to the Maryland Tax Court.

That court viewed the issue presented as whether transfers of the cylinders to its customers on a demurrage basis constituted "sales". Relying upon the sales/use tax exemption contained in Maryland Code Ann. Art. 81 § 326(x), it held that they were. It reasoned:

> The General Assembly need not have provided an exemption from sales tax for demurrage charges were they not considered sales. Moreover, the statute explicitly calls such charges "sales." Thus Petitioner is correct that its initial purchases of liquid cryogenic cylinders are excluded from use tax. (Footnote omitted)[3]

The Comptroller successfully appealed to the Circuit Court for Montgomery County. In reversing the decision of the Tax Court, the court relied upon the definition of "demurrage" in the maritime context, *i.e.*, as the charge for "storage beyond the 'free time'", *Pine Street Trading Corp. v. Farrell Lines, Inc.*, 278 Md. 363, 381, 364 A.2d 1103 (1976), and held that "penalty demurrages are not resales that fall within § 324(d)." It determined that appellant "gives a free period on every cylinder" and, therefore, the demurrage charge is not consideration for transfer of these cylinders. Moreover, it asserted that because appellant derived a business benefit as an ultimate consumer of the cylinders during the free period, the cylinders were not held solely for resale during that period.

 The applicable standard of review of Tax Court decisions is set forth in Maryland Code Ann. Art. 81, § 229(*o*):

---

**3.** The Tax Court reached the same conclusion with regard to the valves purchased for installation into cylinders used in demurrage transactions. As to them, it stated:

> Article 81, § 324(f) provides that "retail sales" for sales tax purposes shall not include sales in which the purpose of the purchaser is "(iii) to use or incorporate the property so transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." This broad exclusion appears to cover the assembling process performed by Petitioner. Thus Petitioner's purchase of the valves is not taxable.

The Comptroller does not dispute that the results reached vis-a-vis the cylinders apply equally to the valves.

In any case, the circuit court ... shall determine the matter upon the record made in the Maryland Tax Court. The circuit court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from.

This section makes clear that what standard of review to apply is dependent upon the nature of the Tax Court decision being reviewed. *Ramsey, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296 (1985); *Thames Point Associates v. Supervisor*, 68 Md.App. 1, 9, 509 A.2d 1207, *cert. denied*, 307 Md. 433, 514 A.2d 1211 (1986); *Comptroller v. World Book Childcraft International, Inc.*, 67 Md.App. 424, 438–39, 508 A.2d 148, *cert. denied*, 307 Md. 260, 513 A.2d 314 (1986).

Thus, appellate review of Tax Court orders based upon an erroneous conclusion of law is expansive, that is, the appellate court may substitute its judgment for that of the Tax Court. *Ramsay, Scarlett & Company v. Comptroller*, 302 Md. at 834, 490 A.2d 1296; *Comptroller of the Treasury v. World Book Childcraft International, Inc., supra*, 67 Md. at p. 438, 508 A.2d 148. Review is limited, however, where there is no error of law and the Tax Court's factual determinations are at issue. *Ramsey Scarlett, supra; World Book, supra.* Under this scenario, the Tax Court's factual determinations must be upheld if there is substantial evidence in the record to support them. *Board of Educ., Mont. Co. v. Paynter*, 303 Md. 22, 34, 491 A.2d 1186 (1985); *Ramsey, Scarlett, supra; Balto. Lutheran High Sch. v. Emp. Sec. Adm.*, 302 Md. 649, 662, 490 A.2d 701 (1985); *Supervisor of Assess. v. Carroll*, 298 Md. 311, 318, 469 A.2d 858 (1984); *Supervisor v. St. Leonard Shores Joint Ven.*, 61 Md.App. 204, 212, 486 A.2d 206, *cert. granted*, 303 Md. 115, 492 A.2d 616 (1985). Yet a different test applies, whether applying the appropriate legal principle, a reasoning mind could have reached the conclusion reached by the agency, *Ram-*

*sey, Scarlett,* 302 Md. at 838, 490 A.2d 1296, when the issue involves a mixed question of law and fact. *Id.; Comptroller v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77 (1977); *World Book, supra,* 67 Md.App. p. 439, 508 A.2d 148.

*Thames Point Associates,* 68 Md.App. at 10, 509 A.2d 1207. With these principles in mind, we proceed to set forth the statutory framework which governs the resolution of this appeal.

Whether a taxpayer is liable for payment of a use or sales tax is governed by Maryland Code Ann. Art. 81, "Revenue and Taxes". Section 373(a) of that article imposes an excise tax on the "use, storage, or consumption in this State of tangible personal property...." "Use, storage, or consumption", however, does not include:

(1) the purchase of tangible personal property by any vendor, or the keeping or retention of possession in this State of tangible personal property, for the purpose of resale within in the meaning of § 324(f)(i) of this article.

(2) the consumption of tangible personal property, or the keeping or retention of possession in this State of tangible personal property for the purpose of consuming said property, in the manufacturing, assembling, processing or refining of other tangible personal property to be produced for sale or in the generation of electricity within the meaning of § 324(f)(ii) of this article.

(3) the incorporation of tangible personal property, or the keeping or retention of possession in this State of tangible personal property for the purpose of incorporating said property, as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, or processing or refining within the meaning of § 324(f)(iii) of this article.

Section 372(d). A sale of tangible personal property to a purchaser is not a taxable retail sale or a sale at retail if the purpose of the purchaser is to (1) resell the property so transferred in the form which the property is received by him, § 324(f)(i), or (2) "to use or incorporate the property so

transferred as a material or part of other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." § 324(f)(iii).

Section 325 requires a seller to collect and pay to the State a sales tax on any "retail sale" of tangible personal property. Section 324(d) defines "sale" as any transaction whereby title or possession or both, of tangible personal property is or is to be transferred by any means whatsoever for a consideration. More particularly, a "retail sale" is the sale in any quantity or quantities of any tangible personal property, section 324(f), subject, of course, to the exceptions in § 324(f)(i)–(iii). Section 326 exempts certain "sales" from the payment of sales taxes. Pertinent to this appeal is the exemption contained in § 326(x), which provides:

(x) *Demurrage charge on gas cylinders.*—Sales in the form of a demurrage charge on what is generally referred to as a gas cylinder, when not imposed as a rental charge but rather as a penalty for a failure to return the cylinder within a designated period.

Since this section absolutely exempts the demurrage transactions *sub judice* from the payment of sales taxes, a fact that the Comptroller does not contest, the only issue presented for our resolution is whether the Tax Court erred in its conclusion that appellant was also exempted from payment of sales or use taxes upon the purchase of cylinders and valves.

The first step in our analysis is to determine if the trial court recognized and applied the correct principles of law governing the case. *See Ramsey, Scarlett,* 302 Md. at 834, 490 A.2d 1296; *Thames Point,* 68 Md.App. at 9, 509 A.2d 1207; *World Book,* 67 Md.App. at 438, 508 A.2d 148. The Tax Court recognized that the law governing this case is contained in Art. 81, in general, and in the sections set out above, in particular. The Tax Court recognized that appellant was not liable for the payment of a use tax if it purchased cylinders and valves *"for the purpose of resale* within the meaning of § 324(f)(i)...." (emphasis added). And, because it also recognized that a sale occurs whenever

there is a transfer by any means whatsoever for a consideration, it perceived the appropriate question to be whether a transfer of a cylinder in a demurrage transaction constitutes a sale. The Tax Court applied § 326(x) to the resolution of that question, interpreting it as necessarily characterizing a demurrage charge in the nature of a penalty, rather than a rental, as a sale.

The foregoing makes patent that a crucial aspect of our analysis involves statutory construction. Both the lower court and the Comptroller take issue with the Tax Court's conclusions concerning the nature of the demurrage transaction.

As we have seen, the Tax Court's conclusions concerning the nature of the demurrage transaction and, thus, its ultimate conclusion that appellant was not liable for taxes on cylinders and valves used in demurrage transactions, was based upon its interpretation of § 326(x). Specifically, it noted that that section created a sales/use tax exemption for demurrage charges, that such an exemption need not have been provided had demurrage charges not been considered sales, and that the section explicitly denominates demurrage charges as sales. We must determine whether these conclusions are correct. That involves statutory construction, a question of law. *Comptroller v. Mandel Re-election Committee*, 280 Md. 575, 578, 374 A.2d 1130 (1977); *Gray v. Anne Arundel County*, 73 Md.App. 301, 309, 533 A.2d 1325 (1987); *Montgomery County v. Fulks*, 65 Md. App. 227, 232–36, 500 A.2d 302 (1985).

In resolving that question, our task is to ascertain and effectuate the actual legislative intention. *In Re Criminal Investigation 1–162*, 307 Md. 674, 685, 516 A.2d 976 (1986); *Jones v. State*, 304 Md. 216, 220, 498 A.2d 622 (1985); *State v. Intercontinental Ltd.*, 302 Md. 132, 137 (1985). The primary source of that intention is the language of the statute itself. *Blum v. Blum*, 295 Md. 135, 140 (1983); *Ford Motor Land Development v. Comptroller*, 68 Md. App. 342, 346–47, 511 A.2d 578, *cert. denied, Comptroller v. Ford Motor Land Development*, 307 Md. 596, 516 A.2d

567 (1986). Where "there is no ambiguity or obscurity in the language of a statute, there is usually no need to look elsewhere to ascertain the intent of the General Assembly." *City of Baltimore v. Hackley*, 300 Md. 277, 283, 477 A.2d 1174 (1984). Similarly, we "may not insert or omit words to make a statute express an intention not evidenced in its original form". *Id.* Courts should not create ambiguity where none exists and should "be wary of inserting words with a view toward making the statute express an intention which is different from its plain meaning...." (citation omitted) *Fulks*, 65 Md.App. at 233, 500 A.2d 302.

■ The decision relative to the correctness of the Tax Court's conclusion must be viewed in light of the definition of "sale" in § 324(d). That definition requires only that the transfer be "by any means whatsoever for a consideration"; it is not limited to the examples set forth, *i.e.* "rental, lease or license to use, or royalty, by a vendor to a purchaser." There can be no doubt but that, as the Tax Court found, the exemption for demurrage charges is found in a section of the statute specifically headed "Exemptions—In General." Nor can it be doubted that the language of § 326(x) specifically characterizes penalty demurrage charges as "sales". Moreover, again as noted by the Tax Court, unless the General Assembly deemed demurrage charges when imposed as a penalty, to be "sales", would not have created an exemption for them. Furthermore, this interpretation is consistent with the definition of "sale" in § 324(d). A penalty charge is "consideration" and a demurrage transaction is a "means" by which "possession" of the cylinder is "transferred." We hold that the language of § 326(x) is plain and unambiguous and, further, that the Tax Court properly recognized and applied the correct law governing the facts of this case.

A necessary component of the Tax Court's decision is its factual finding that the cylinders and the valves were purchased by appellant for the purpose of using them in

penalty demurrage transactions.[4] That factual determination is supported by the record. Appellant presented testimony that the cylinders it purchased were used in two ways: some of them were sold directly to customers outright[5] and the remainder were used in demurrage transactions. The evidence was also to the effect that the cylinders were interchangeable. Implicitly, therefore, whether a demurrage charge was actually billed or collected in any given case, whenever gases were sold in containers owned by appellant, appellant contemplated from the outset of that transaction that a demurrage charge would apply to those containers. Moreover, appellant produced evidence that a demurrage charge was imposed in 99 percent of the transactions. The Comptroller offered absolutely no evidence to refute this testimony. Similarly, with regard to the valves purchased for installation in cylinders which ultimately were used in demurrage transactions, the same rationale applies. There is, therefore, relevant evidence in the record as a reasoning mind might accept as adequate to support the Tax Court's conclusion that the cylinders were purchased for purposes of demurrage transactions; hence, that factual determination is supported by substantial evidence.

Having determined that the Tax Court recognized and applied the correct principles of law governing the case, and that the pertinent factual finding is supported by substantial evidence in the record, there only remains for us to determine whether that court appropriately applied the law to the facts. That determination involves an analysis of "whether ... a reasoning mind could reasonably have reached the conclusion reached by the [Tax Court], consistent with a proper application of the [controlling legal princi-

---

**4.** The Comptroller has no disagreement with appellant's classification of its demurrage charge as a penalty, rather than a rental. Indeed, he conceded as much before the Tax Court and his argument on appeal remains consistent. Moreover, as its memorandum opinion reflects, the lower court is also of the view that the demurrage transaction involves a penalty, as opposed to a rental, charge.

**5.** There is no issue on this appeal as to those cylinders.

ples]." *Ramsey, Scarlett,* 302 Md. at 838, 490 A.2d 1296. We think that it could. Having found that the cylinders and valves were purchased for the purpose of resale, the Tax Court applied its interpretation of § 326(x) to that fact and determined that pursuant to § 372(d)(1), appellant was not liable for the payment of a use tax. We have already determined that the Tax Court's interpretation of § 326(x) is correct. Thus, the reasons which constitute substantial evidence to support the Tax Court's factual finding also support the conclusion reached by the Tax Court on the ultimate issue. Accordingly, it is obvious that the lower court's contrary findings of fact and holding can only be attributed to its having substituted its judgment for that of the Tax Court. It erred in doing so.

JUDGMENT REVERSED.

COSTS TO BE PAID BY COMPTROLLER.