REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 335

September Term, 2013

_____

FRATERNAL ORDER OF POLICE,
MONTGOMERY COUNTY LODGE 35

v.

MONTGOMERY COUNTY, MARYLAND

_____

Krauser, C.J.,
Meredith,
Woodward,

JJ.

_____

Opinion by Meredith, J.

_____

Filed: March 27, 2014

The Circuit Court for Montgomery County denied a Petition for Award of Costs and Disbursements that was filed by Fraternal Order of Police, Lodge 35 ("appellant" or "FOP"), which was seeking reimbursement of the fees it incurred in fending off a motion to stay a request for arbitration. FOP's claim for attorneys' fees and costs was filed after appellant scored a court victory over Montgomery County ("appellee" or "the County"); the Court of Appeals ruled that a grievance filed by FOP was subject to arbitration pursuant to a collective bargaining agreement between the parties. *Montgomery County, Maryland v. Fraternal Order of Police, Montgomery County Lodge 35, Inc*., 427 Md. 561, 567 (2012) (hereafter referred to as "*FOP I*"). After the Court of Appeals ruled in *FOP I* that the grievance was indeed subject to arbitration, FOP filed its petition asking that the Circuit Court for Montgomery County order the County to reimburse FOP for the litigation expenses and costs it had incurred up to that point in its efforts to establish and confirm that the grievance was arbitrable. The circuit court rejected FOP's argument that § 3-228(b) of the Courts and Judicial Proceedings Article of the Maryland Code authorizes such an award of litigation expenses at that preliminary stage in the arbitration proceedings, and the court denied FOP's fee petition. This appeal followed.

## QUESTION PRESENTED

Appellant presents a single question for our review:

Does Section 3-228(b) of the Maryland Uniform Arbitration Act permit a court, following litigation of a petition to stay arbitration, to award the prevailing party reasonable attorneys' fees and costs?

We will affirm the circuit court's denial of the appellant's Petition for Award of Costs and Disbursements.

## FACTS AND PROCEDURAL HISTORY

The proceedings that led to the present dispute were described as follows by the Court of Appeals in *FOP I*:

> The Fraternal Order of Police, Montgomery County Lodge 35, Inc. ("FOP" or "Appellee") filed a grievance under the "Maintenance of Standards" provision of its collective bargaining agreement ("CBA" or "Agreement") with Montgomery County ("County" or "Appellant") following the County's unilateral decision to discontinue a long-standing practice of allowing shop stewards to sit in on disciplinary interrogations for training purposes. The County filed a motion to dismiss the grievance, arguing that arbitration of the issue was preempted by the Law Enforcement Officers' Bill of Rights . . . [LEOBR]. The arbitrator determined that the grievance was not preempted and denied the motion to dismiss. **The County then filed a petition to vacate the "arbitration award" in the Circuit Court for Montgomery County.** The Circuit Court affirmed the arbitrator's decision and granted summary judgment on behalf of the FOP. We affirm the judgment of the Circuit Court that the LEOBR is not implicated by the steward training grievance and, therefore, does not preempt its arbitration under the CBA.

427 Md. at 564 (emphasis added) (footnote omitted).

The Court of Appeals observed in *FOP I* that the County had been mistaken in labeling its motion as a petition to vacate an arbitration award; there *was no award to be vacated*. Consequently, the Court of Appeals treated the claim for relief which the County had labeled a "petition to vacate" as a motion to stay arbitration. The Court explained, *id*. at 568-69:

> Preliminarily, we take this opportunity to clarify the procedural issue raised by the trial judge when, in confirming the determination of the

2

arbitrator, he noted confusion as to whether a petition to "vacate" was the "correct terminology," under the circumstances. Indeed, by filing a petition to vacate the "arbitration award," the County suggested that an award was, in fact, made by the arbitrator. It used language throughout the petition that referred to the arbitrator's denial of its dispositive motion as an "award," despite its preliminary nature and the fact that arbitration on the merits had not taken place.

Appellant apparently relied on *Montgomery County v. Fraternal Order of Police Montgomery County Lodge 35, Inc*., 147 Md. App. 659, 810 A.2d 519 (2002) ("*Lodge 35*"), as the blueprint for pursuing this procedural error. In that case the FOP requested arbitration, and the County, rather than petitioning the circuit court for a stay of arbitration, filed a motion to dismiss before the arbitrator, arguing that the particular dispute was not arbitrable. After the arbitrator denied the motion to dismiss, the County filed a "petition to vacate arbitration award" in the circuit court. The circuit court affirmed the determination of arbitrability, which was then appealed. On appeal, the intermediate appellate court stated that although the arbitrator issued a preliminary decision rather than a final award, "[n]evertheless, the parties have not argued that an arbitrator has to render a final award before a petition to vacate a preliminary decision can be filed, and we are not aware of any authority compelling that conclusion." *Lodge 35*, 147 Md. App. at 666, 810 A.2d at 523. The intermediate appellate court then continued to evaluate whether the arbitrator exceeded his powers and whether the "award" should be "vacated" under the Arbitration Act, Maryland Code § 3-224 of the Courts and Judicial Proceedings Article.

The reasoning of the intermediate appellate court in *Lodge 35* is incorrect because it is clear, pursuant to our case law, that a petition to vacate an arbitration award requires an actual award, *i.e*., a final decision by an arbitrator on the merits. *See Messersmith, Inc. v. Barclay Townhouse*, 313 Md. 652, 663, 547 A.2d 1048, 1053 (1988) (noting that Md. Code § 3-208 and § 3-224 of the Courts and Judicial Proceedings Article are "mechanisms through which a court (based upon its independent assessment of the evidence thereby concluding that no agreement to arbitrate exists) is authorized to either stay an arbitration proceeding, under § 3-208, or invalidate it *after the fact*, under § 3-224(b)(5)." (emphasis added)); *Brewster v. Woodhaven Bldg. & Dev., Inc*., 360 Md. 602, 620, 759 A.2d 738, 753-54 (2000) (noting that § 3-224 is one of three sections of the Arbitration Act which "permit parties who have *been through arbitration* to file certain *post-award* petitions in the Circuit Court .

3

. .” (Wilner, J., dissenting on other grounds)); *Stauffer Constr. Co. v. Bd. of Educ*., 54 Md. App. 658, 664, 460 A.2d 609, 612 (1983) ("When such an [arbitration] agreement exists, or is alleged to exist, the courts are generally enjoined by the statute from interfering with the arbitration process.  Indeed, the court's jurisdiction [before arbitration is completed] may properly be invoked in but two limited contexts – to compel arbitration or to stay it."); MARTIN DOMKE, DOMKE ON COMMERCIAL ARBITRATION, § 39:6 at 15-16 (3d ed. 2012) ("Before an [arbitration] award is ripe for review, it must be 'definite and final,'" and resolve the parties' dispute.  (footnote omitted)).

Despite [the fact that the County filed] an incorrect motion, however, we treat the County's "petition to vacate arbitration award," in the present case, as a motion to stay arbitration.

The Court of Appeals ruled in *FOP I* that the circuit court's denial of the County's motion to stay the arbitration was immediately appealable because such an order "'exhausts the court's jurisdiction.'" *Id*. at 570 (quoting *Brewster, supra*, 360 Md. at 631). Similarly, the order as to which FOP noted the present appeal exhausted the circuit court's jurisdiction once again, and was immediately appealable.

The instant appeal flows from FOP's decision to file in the circuit court — before proceeding with the arbitration of its grievance — a Petition for Award of Costs and Disbursements. FOP asserts (and the County does not dispute) that the Maryland Uniform Arbitration Act ("MUAA"), codified at Md. Code (1973, 2013 Repl. Vol.), Courts and Judicial Proceedings Article  ("CJP"), § 3-201 *et seq*., governs these proceedings. FOP argued in its fee petition that CJP § 3-228(b) authorizes the circuit court to order the County to reimburse FOP for all of the litigation expenses FOP had incurred up to that point, including attorneys' fees, in the amount of $52,971.84. FOP contends that CJP § 3-228(b)

4

permits a court to enter an order for such fee shifting with respect to "any petition" that is filed relative to a proceeding under the MUAA.

The County filed an opposition to FOP's fee petition, and, following a hearing on April 9, 2013, the circuit court denied FOP's request. FOP then noted the present appeal.

## STANDARD OF REVIEW

Because this case turns upon an issue of statutory construction, our review is *de novo*. *Addison v. Lochearn Nursing Home, LLC*, 411 Md. 251, 275-77 (2009). The Court of Appeals summarized the relevant principles of statutory construction in *Victoria Falls v. Prince George's County,* ____ Md. ____, No. 59, Sept. Term 2013, slip op. at 11-12 (filed March 21, 2014):

> "The cardinal rule of statutory interpretation is to ascertain and effectuate the real and actual intent of the Legislature. A court's primary goal in interpreting statutory language is to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by the statutory provision under scrutiny.
>
> "To ascertain the intent of the General Assembly, we begin with the normal, plain meaning of the language of the statute. If the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction. We neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with 'forced or subtle interpretations' that limit or extend its application.
>
> "We, however, do not read statutory language in a vacuum, nor do we confine strictly our interpretation of a statute's plain language to the isolated section alone. Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute. We presume that the

5

Legislature intends its enactments to operate together as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope.

"Where the words of a statute are ambiguous and subject to more than one reasonable interpretation, or where the words are clear and unambiguous when viewed in isolation, but become ambiguous when read as a part of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process. In resolving ambiguities, a court considers the structure of the statute, how it relates to other laws, its general purpose, and the relative rationality and legal effect of various competing constructions.

"In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense."

(Quoting *Mummert v. Alizadeh*, 435 Md. 207, 213-14, 77 A.3d 1049, 1052-53 (2013).)

## DISCUSSION

As noted above, CJP §§ 3-201 through 3-234 are known as the Maryland Uniform Arbitration Act ("MUAA"). The MUAA was adopted by the General Assembly in 1973, and the act "'expresses the legislative policy favoring enforcement of agreements to arbitrate,' *Allstate Ins. Co. v. Stinebaugh*, 374 Md. 631, 641, 824 A.2d 87, 93 (2003), by giving the courts jurisdiction to enforce arbitration agreements and enter judgments on arbitration awards." *Questar Homes of Avalon, LLC v. Pillar Constr., Inc.*, 388 Md. 675, 684 (2005).

FOP's petition seeking costs was based expressly upon CJP § 3-228, which is captioned "Judgment, costs, and disbursements," and provides:

6

(a) *Entering of judgment; enforcement of judgment.* — (1) If an order confirming, modifying, or correcting an award is granted, a judgment shall be entered in conformity with the order.

(2) The judgment may be enforced as any other judgment.

(b) *Costs and disbursements.* — A court may award costs of the petition, the subsequent proceedings, and disbursements.

In its brief, FOP asserts that "[t]he meaning of Section 3-228(b) ultimately depends on the meaning of the term 'petition,' as used in that provision." FOP further contends "that subsection (b)'s reference to 'petition' includes both petitions to vacate arbitration awards under the MUAA . . . and petitions to stay arbitration under the MUAA (as in this case), . . . provided that the party filing such a petition is unsuccessful in the court proceedings." The linchpin of FOP's argument is its insistence that "Section 3-228(b) of the MUAA plainly permits an award of fees and costs to the prevailing party after litigation on **any petition** filed under the MUAA." (Emphasis added.)

It is immediately apparent that FOP's argument is largely dependent upon its substitution of the words "any petition" for the phrase that actually appears in CJP § 3-228(b), which is "the petition." The legislature did not use the phrase "*any* petition," and we agree with the circuit court's conclusion that it would be improper to interpret CJP § 3-228 as if that phraseology had been chosen by the General Assembly.

In the County's brief, the appellee responded to the appellant's argument that CJP § 3-228(b) permits a court to award fees and costs relative to "any petition filed under the MUAA" by observing, in part:

7

The trial court correctly rejected this interpretation, which reads subsection (b) in isolation from the rest of § 3-228. The more reasonable reading of the law is one that reads § 3-228 as a whole. "The petition" in subsection (b) is a reference to the immediately preceding language in subsection (a). Thus, "the petition" in subsection (b) is any petition that results in "an order confirming, modifying, or correcting an award," as described in subsection (a).

As noted above, the Court of Appeals observed in *FOP I* that, although the County erroneously captioned its motion as a "Petition to Vacate Arbitration Award," no arbitration on the merits had taken place. The Court of Appeals stated: "[I]t is clear, pursuant to our case law, that a petition to vacate an arbitration award requires an actual award, *i.e.,* a final decision by the arbitrator on the merits." 427 Md. at 569. The Court concluded that, despite the label the County placed on its motion, "we treat the County's 'petition to vacate arbitration award,' in the present case, as a motion to stay arbitration." *Id.* But we cannot rest our decision upon the ruling in *FOP I* that the County had effectively filed a "motion to stay" rather than a "petition to vacate." FOP correctly points out that the provision of the MUAA which permits a party to file a motion to stay arbitration — CJP § 3-208 — describes such a request as a "petition . . . to stay commenced or threatened arbitration proceedings." Consequently, even though the Court of Appeals expressly "treat[ed] the County's petition . . . as a motion to stay arbitration," *FOP I, supra,* 427 Md. at 569 (quotation marks omitted), the MUAA recognizes that such a motion can also be called a petition.

Nevertheless, we conclude that the reference in CJP § 3-228(b) to an award of costs relative to "the petition" refers to a petition filed in court pursuant to either CJP § 3-223, § 3-224, or § 3-227, subsequent to the delivery of an arbitration award, seeking court action

8

upon the award. We reach this conclusion by applying the principle of statutory construction that requires us to "interpret a provision 'in the context of the entire statutory scheme of which it is a part.'" *Park & Planning v. Anderson*, 164 Md. App. 540, 570 (2005) (quoting *Gordon Family P'ship v. Gar OnJer*, 348 Md. 129, 138 (1997)), *aff'd*, 395 Md. 172, 182 (2006). Our conclusion is bolstered by a review of the statutory history of CJP § 3-228(b).

With respect to the statutory scheme in which CJP § 3-228(b) must be read, we note that the MUAA contains no statutory definition of the term "petition." Consequently, we look to the context in which that word is used in CJP § 3-228(b). The sequence of the provisions in CJP Subtitle 2 leading up to § 3-228 includes the following. Sections 3-201 through 3-218 all deal with issues that could arise prior to delivery of the arbitration award to the parties. Section 3-219 provides that the "arbitration award shall be in writing," and provides for delivery of copies of the award to the parties. Section 3-220 addresses transcription of the proceedings. Section 3-221 notes that the award "shall provide for payment of the arbitrators' expenses, fees, and any other expense incurred in the conduct of the arbitration," but also specifies that, "[u]nless the arbitration agreement provides otherwise, the award may not include counsel fees." Section 3-222 provides that a party "may apply to the arbitrators to modify or correct an award within 20 days after delivery of the award to the applicant."

Beginning with CJP § 3-223, most of the remaining sections in the MUAA address the procedures to be followed if the parties need to seek relief in court after the arbitration award has been issued by the arbitrators. These provisions make several references to post-

9

award petitions that may be filed in court. Section 3-223 provides: "A petition to modify or correct the award shall be filed within 90 days after delivery of a copy of the award to the applicant." Section 3-224 provides for filing "a petition to vacate the award." Section 3-225 provides for rehearing in the event a petition to vacate is granted. Section 3-226 is captioned "Denial of petition to vacate," and provides for the court to "confirm the award." Section 3-227(a) states: "A party may petition the court to confirm the award."

The next section in the MUAA is the section at issue in the present appeal, CJP § 3-228, which, as quoted above, provides in subsection (a) for the entry of a judgment "[i]f an order confirming, modifying, or correcting an award is granted," and then states in subsection (b) that "[a] court may award costs of the petition, the subsequent proceedings, and disbursements." In our view, when § 3-228(b) is read in context in the MUAA, it clearly refers to awarding costs if the court grants a petition to confirm, or modify, or correct an arbitration award. No such petition was ever filed in the present proceedings. Consequently, CJP § 3-228(b) does not provide any authority for a court to entertain or grant FOP's Petition for Award of Costs and Disbursements relative to the expenses FOP incurred in responding to the County's effort to avoid arbitration of the grievance.[1]

_____

[1] Although "petition" is not defined in the MUAA, the term appears repeatedly throughout the MUAA, including these sections (emphasis added):

• § 3-203 (a): An initial **petition** shall be filed with the court in the county:

(1) [a]s provided by the agreement; or

(continued...)

10

(...continued)

(2) [w]here the arbitration hearing was held.;

(b): If the agreement does not provide for a county in which the **petition** shall be filed or if the hearing has not been held, the **petition** shall be filed with the court in:

(1) [t]he county where the adverse party resides;
(2) [t]he county where the adverse party has a place of business; or
(3) [i]f the adverse party has neither a residence nor a place of business in the State, any county.;

(c): A subsequent **petition** shall be filed with the court hearing the initial **petition** unless the court directs otherwise.

- § 3-205    (a): Except as otherwise provided, a **petition** under this subtitle shall be heard in the manner and upon the notice provided by law or rule of court for the procedures when a **petition** is filed in an action.

     (b): Unless the parties agree otherwise, notice of the initial **petition** for an order shall be served in the manner provided by law or rule of court for the service of summons in an action.

- § 3-207    (a): If a party to an arbitration agreement described in § 3-202 of this subtitle refuses to arbitrate, the other party may file a **petition** with the court to order arbitration.

* * *

     (c): If the court determines that the agreement [to arbitrate] exists, it shall order arbitration. Otherwise it shall deny the **petition**.

- § 3-208    (a): If a party denies existence of the arbitration agreement, he may **petition** a court to stay commenced or threatened arbitration proceedings.

(continued...)

Both parties cited *Blitz v. Beth Isaac Adas Israel Congregation*, 352 Md. 31 (1998), in support of their respective positions. In *Blitz*, after a rabbi and a synagogue submitted a

[1](...continued)

(b)    (1)    A **petition** to stay arbitration shall be filed with the court where a **petition** to order arbitration has been filed.

(2)    If a **petition** for order to arbitrate has not been filed, the **petition** to stay arbitration may be filed in any court subject to venue provisions of Title 6 of this article.

- § 3-209    (a):    A court shall stay any action or proceeding involving an issue subject to arbitration if:

(1)    A **petition** for order to arbitrate has been filed; [ . . .]

* * *

(c):    If a **petition** to stay has been filed with a court where any action or proceeding concerning arbitration is pending, the court's order to arbitrate shall include the stay.

- § 3-211    (b):    In the absence of a provision [setting forth the method of appointment of arbitrators] in the agreement, a party may file a **petition** with a court to appoint one or more arbitrators.

- § 3-213    (d):    On **petition** of a party, the court may direct the arbitrators to proceed promptly with the hearing and determination of the controversy.

If we were to accept FOP's argument that CJP § 3-228(b) authorizes a court to award attorney's fees and costs for "*any* petition" filed under the MUAA, such a construction would lead to the absurd result of multiple fee awards being requested throughout the course of the arbitration process. We are confident that that was not what the legislature envisioned when it adopted CJP § 3-228(b). *See Blandon v. State*, 304 Md. 316, 319 (1985) (stating that courts should "avoid construing a statute in a way which would lead to absurd results").

12

dispute to an arbitration panel, the arbitrators ordered the synagogue to pay Blitz $5,000. The synagogue did not pay. Rabbi Blitz then filed, in the Circuit Court for Baltimore County, a Petition to Confirm and Enforce Arbitration Award and Complaint for Damages, asking the court to not only order the synagogue to pay the $5,000 arbitration award, but also that it be required to pay Blitz's costs and fees, including attorneys' fees, incurred in filing and pursuing the petition to enforce the award. The court ordered the synagogue to pay Blitz's costs and disbursements, but not his attorneys' fees. When Blitz appealed to this Court, we affirmed, but the Court of Appeals then reversed our ruling and held that reasonable attorneys' fees were recoverable. The question presented, as the Court framed it, was whether "the prevailing party in a binding arbitration proceeding may recover reasonable attorneys' fees when the losing party's unjustified refusal to comply with **the award** requires the prevailing party to institute and successfully prosecute an action in order to confirm and enforce **the arbitration award**." *Id*. at 33. (Emphasis added.) One readily-apparent, and dispositive, difference between *Blitz* and the instant case is that, in the instant case, there has been no arbitration award.

Applying principles of statutory construction, the Court held in *Blitz* that "'disbursements,' in the context of proceedings to confirm an arbitration award, include attorneys' fees." *Id*. at 44. A later opinion was issued in *Blitz*, clarifying that the Court's "decision contemplated the payment of *all* attorneys' fees necessary to obtain confirmation of the arbitration award. . . ." *Id*. at 47. The Court then spelled out its holding: "[P]ursuant

13

to 3-228(b), the prevailing party is entitled to recover attorneys' fees incurred both at trial and on appeal in confirming and enforcing an arbitration award." *Id*.

One of the out-of-state cases the *Blitz* Court cited with approval was a Nevada case interpreting a comparable section of the Uniform Arbitration Act. In *County of Clark v. Blanchard Construction Co.*, 98 Nev. 488, 653 P.2d 1217, 1220 (1982), the Nevada court held that the provision in its arbitration statute that was comparable to CJP § 3-228(b) applied only to expenses incurred after issuance of the arbitration award. The *Blitz* Court stated, 352 Md. at 42:

> The court in *County of Clark v. Blanchard Constr. Co.* [653 P.2d at 1220] recognized the significant difference between the initial arbitration proceedings and the confirmation proceedings when it interpreted its version of § 3-228 "to mean that the court is permitted to award attorneys' fees only for the effort expended in this case in obtaining an order confirming the arbitration award and not for any efforts expended prior to that time."

The holding in *Blitz* is entirely consistent with our interpretation of CJP § 3-228(b), and does not provide any support for FOP's argument that that provision of the MUAA also applies to petitions to stay arbitration.

We also note that the statutory history of CJP § 3-228(b) supports our conclusion that the petition referred to in that subsection must be a petition filed subsequent to the delivery of the arbitration award. The County traces the statutory predecessors of CJP § 3-228 back to 1965, when Maryland first adopted an arbitration statute based upon the Uniform Arbitration Act, *viz.*, 1965 Laws of Maryland Chapter 231, which was codified as Maryland

Code (1957, 1965 supp.), Article 7. In that version of the Maryland Uniform Arbitration Act, Art. 7, § 14 — which is the provision most comparable to CJP § 3-228 — provided:

> Upon the granting of an order confirming, modifying or correcting an award, judgment or decree shall be entered in conformity therewith and be enforced as any other judgment or decree. Costs of the application and of the proceedings subsequent thereto, and disbursements may be awarded by the court.

The two sentences in Art. 7, § 14 of the original act were a single paragraph until a major code revision produced the Courts and Judicial Proceedings Article in 1973, at which time the two sentences were recodified as CJP § 3-228. The revisor's note to CJP § 3-228 indicated that the change was merely "in style." *See Allen v. State*, 402 Md. 59, 71 (2007) (a change in phraseology of statute as part of substantial recodification is generally not indicative of intent to modify the law or change the meaning of a statute). Although the phraseology of the concepts expressed in Art. 7, § 14 of the original MUAA has evolved slightly as a result of code revisions since 1965, none of the revisions reflect a legislative intent to broaden the scope of the language that is presently codified in CJP § 3-228(b) to provide for the award of fees and costs related to petitions filed prior to the issuance of the arbitration award. The circuit court correctly rejected FOP's application for attorneys' fees and costs.

Finally, we observe that FOP would have fared no better if Maryland had adopted the most current iteration of the comparable provision in the Revised Uniform Arbitration Act as published in 2000 by the National Conference of Commissioners on Uniform State Laws.

*See* Uniform Laws Annotated (2009), Volume 7, Part 1A. Section 25 of the 2000 edition of the Revised Uniform Arbitration Act is as follows:

**§ 25. Judgment on Award; Attorney's Fees and Litigation Expenses.**

(a) Upon granting an order confirming, vacating without directing a rehearing, modifying, or correcting an award, the court shall enter a judgment in conformity therewith. The judgment may be recorded, docketed, and enforced as any other judgment in a civil action.

(b) A court may allow reasonable costs of the [motion] and subsequent judicial proceedings.

(c) On [application] of a prevailing party to a contested judicial proceeding under Section 22, 23, or 24, the court may add reasonable attorney's fees and other reasonable **expenses of litigation incurred in a judicial proceeding after the award is made** to a judgment confirming, vacating without directing a rehearing, modifying, or correcting an award.

(Emphasis added; brackets in original.) Sections 22, 23, and 24 of the Revised Uniform Arbitration Act all relate to post-award proceedings in which a party asks a court to either confirm, vacate, modify, or correct an award that has been issued. Consequently, if the Maryland General Assembly were to revise CJP § 3-228 to conform to § 25 of the Revised Uniform Arbitration Act, the result in this case would be no different.

> **JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT**.